# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| BENJAMIN BODDE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>VRX MEDIA GROUP, LLC; and MOBILESPHERE LLC d/b/a SLYBROADCAST,<br><br>Defendants. | Case No. 2:21-cv-01205-BHL |

**FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §§ 227 ET SEQ.**

## INTRODUCTION

1. Plaintiff BENJAMIN BODDE ("Mr. Bodde" or "Plaintiff"), individually and on behalf of all others similarly situated, brings this action for damages and injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of defendants VRX MEDIA GROUP, LLC ("VRX Media") and MOBILESPHERE LLC d/b/a SLYBROADCAST ("MobileSphere") (collectively, the "Defendants") in negligently, knowingly and/or willfully transmitting unsolicited, autodialed calls and voicemails to cellular telephones of consumers, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, *et seq.*, thereby invading the privacy of Plaintiff and the putative class members.

2. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

3. Defendants placed the automated calls and voice messages to Plaintiff and others similarly situated without their prior express written consent to solicit their business. This is exactly the type of telephonic contact the TCPA was designed to prevent.

4. Unless otherwise indicated, the use of Defendants' names in this First Amended Complaint ("FAC") includes all of their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

**NATURE OF THE ACTION**

5. In 1991, Congress passed the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*., in response to complaints about abusive telemarketing practices.

6. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and it made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub. L. No. 102–243, § 11. Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id*. at § 12.

7. The Federal Trade Commission ("FCC") is charged with the authority to issue regulations implementing the TCPA. According to findings by the FCC, automated calls and text messages are prohibited under the TCPA because receiving them is a greater invasion of privacy and nuisance compared to live solicitation calls. The FCC has also acknowledged that wireless customers are charged for any incoming calls and text messages.

8. In 2015, the FCC noted, "[m]onth after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the Commission." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 1 (2015).

9. The transmission of an unsolicited calls and voice messages to a cellular device is distracting and aggravating to the recipient and intrudes upon the recipient's seclusion.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case arises out of violation of federal law—the TCPA, 47 U.S.C. § 227(b).

11. Because Defendant VRX Media resides in, and directs and conducts business within Wisconsin and this judicial district, personal jurisdiction is established.

12. The Court also has personal jurisdiction over MobileSphere because MobileSphere directs and conducts business within Wisconsin and this judicial district.

13. Venue is proper in the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1391 for the following reasons: (1) VRX Media resides within this judicial district and (2) VRX Media conducted business within this judicial district at all times relevant.

## PARTIES

14. Plaintiff is an individual residing in San Diego County, City of Escondido, State of California, and is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

15. Upon information and belief, VRX Media is a limited liability company organized in Wisconsin with a principal place of business at 3736 S 54th St, Milwaukee, WI 53220.

16. Upon information and belief, VRX Media is a privately-owned company founded

in or around 2015 that specializes in real estate virtual staging, 3D tours, photography, videography, and marketing.

17. Upon information and belief, MobileSphere is a limited liability company organized in Massachusetts with a principal place of business at 7 Faneuil Hall Marketplace, 4th Fl, Boston, MA 02109.

18. Upon information and belief, MobileSphere was founded in November of 2015.

19. Defendants are, and at all times mentioned herein were, "persons" as defined by 47 U.S.C. § 153(39).

20. Plaintiff alleges that at all times relevant herein, Defendants conducted business in Wisconsin, in the County of Milwaukee, and within this judicial district.

## FACTUAL ALLEGATIONS

21. MobileSphere is a telecommunications software company that specializes in mobile communication products, including ringless voicemail products.

22. MobileSphere touts its numerous mobile communications products on its website.[1]

23. MobileSphere placed numerous automated telephone calls with prerecorded messages to Plaintiff and Class Members on behalf of, at the direction of, and with the permission of, VRX Media who hired MobileSphere to place the calls for marketing purposes.

24. Upon information and belief, MobileSphere placed automated telephone calls to Plaintiff and Class Members to advertise various real estate marketing products of VRX Media.

25. VRX Media knew that MobileSphere was making telephone calls on its behalf, and upon information and belief, directed the timing and script of the calls.

26. VRX Media knew or reasonably should have known that MobileSphere was using

---

[1] *See* MobileSphere website, https://www2.mobile-sphere.com, last visited December 8, 2021.

4

pre-recorded messages on the telephone calls that MobileSphere was making on its behalf, specifically, the slybroadcast service.

27. On MobileSphere's website, MobileSphere advertises that its "slybroadcast" service is used to "Send pre-recorded audio messages directly to the voicemails of thousands of phone number at one time."[2]

28. At all times relevant, VRX Media had the right to control MobileSphere's telemarketing activities, a right VRX Media exercised.

29. At all times relevant, VRX Media authorized MobileSphere to use its name in their marketing and contracts with consumers.

30. Upon information and belief, VRX Media either provided to MobileSphere, or was aware of the specific calling scripts used by MobileSphere to deliver pre-recorded messages to consumers on VRX Media's behalf.

31. VRX Media was at all times relevant aware of MobileSphere's marketing activities.

32. As such, Plaintiff is informed and believes that MobileSphere's acts and/or omissions complained of herein were known, consented to, and/or ratified by VRX Media. Further, VRX Media knowingly received and retained monetary benefit from the transactions it entered into as a result of both its business arrangement with MobileSphere and their unlawful calling and telemarketing practices as alleged herein.

33. Plaintiff is, and at all times mentioned herein was, the subscriber of the cellular telephone number ending 9340 (the "9340 Number"), with an area code of "858". The 9340 Number is, and at all times mentioned herein was, assigned to a cellular telephone service as

---

[2] https://www2.mobile-sphere.com/#our-products, last visited December 16, 2021.

specified in 47 U.S.C. § 227(b)(1)(A)(iii).

34. At no time did Plaintiff ever enter into a business relationship with Defendants, nor did Plaintiff ever provide the 9340 Number directly to Defendants through any medium.

35. On or about October 27, 2020, Defendants placed an automated call to Plaintiff on the 9340 Number from the number (262) 989-8587.

36. Upon information and belief, Defendants used a pre-recorded voice to leave a voicemail on Plaintiff's cell phone. The voicemail was from "Kelly from VRX Media", and advertised VRX Media's services of real estate photography, including aerial drone services, and instructing "all real estate professionals" to visit "vrxmedia.com" to enter a promo code "VRX50" for 50% off services.

37. Plaintiff was confused as to why he had received a solicitation call and voicemail from Defendants because Plaintiff had no prior business relationship or contact with Defendants. Further, Plaintiff never provided Defendants with his cellular telephone number. Frustrated and confused by this unwanted automated call and voicemail, Plaintiff did not return Defendants' call.

38. On or about November 17, 2020, Defendants placed a second automated call to Plaintiff on the 9340 Number from the number (262) 719-4588.

39. Upon information and belief, Defendants used a pre-recorded voice to leave a voicemail on Plaintiff's cell phone. The voicemail was from "Patrick from VRX Media", and advertised VRX Media's services of real estate photography, including aerial drone services, and instructing "all San Diego agents" to visit "vrxmedia.com" to enter a promo code "VRX50" for 50% off services. Again, Plaintiff did not return Defendants' call.

40. Upon information and belief, the above two calls were placed using an "artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A), to contact Plaintiff regarding

the advertisement of VRX Media's services.

41. VRX Media or its agent called Plaintiff's cellular telephone each time in an effort to persuade Plaintiff to use VRX Media's real estate marketing services. Both voicemails that Defendants left on Plaintiff's cellular phone, on October 27, 2020 and November 17, 2020, contain a brief delay before the speaker's voice is heard.

42. The calls at issue, sent by Defendants to the 9340 Number in October and November of 2020, constitute "advertisement" and/ or "telemarketing" call as prohibited by the TCPA, as Defendants placed the calls to Plaintiff's cellular phone to advertise VRX Media's real estate marketing and photography services.

43. Upon information and belief, VRX Media controlled the content of the calls, timing of the calls and voicemails, and which phone numbers to call, in an effort to increase the use of its business.

44. Despite Plaintiff's numerous attempts to ignore and avoid Defendants' calls, Defendants have called Plaintiff several times on his cellular telephone without his prior express written consent.

45. The months of unwanted calls from Defendants caused Plaintiff to become annoyed and frustrated.

46. Through Defendants' aforementioned conduct, Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA.

47. Defendants' calls forced Plaintiff and other similarly situated class members to live without the utility of their cellular phones by occupying their telephone with one or more unwanted calls, causing nuisance and lost time.

48. The telephone number VRX Media or its agent called was assigned to a cellular

telephone service for which Plaintiff incurs a charge for a cellular telephone service pursuant to 47 U.S.C. § 227(b)(1).

49. The calls to Plaintiff were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

50. Defendants' calls to Plaintiff's cellular telephone number were unsolicited by Plaintiff and were placed without Plaintiff's prior express written consent or permission. Therefore, Defendants did not have "prior express consent" to call Plaintiff with the use of a pre-recorded voice as prohibited by 47 U.S.C. § 227(b)(1)(A).

## CLASS ACTION ALLEGATIONS

51. Plaintiff brings this action on behalf of himself and all others similarly situated (the "Class").

52. Plaintiff represents and is a member of the Class pursuant to Fed. R. Civ. P. 23(b)(3) and/or (b)(2), which is defined as follows:

> All persons within the United States who received an automated call to their cellular telephone from Defendants, their employees or their agents, with an artificial or prerecorded voice message, within the four years prior to the filing of the First Amended Complaint.

53. Plaintiff also represents, and is a member of, the Sub-Class, pursuant to Fed. R. Civ. P. 23(b)(3) and/or (b)(2), which is defined as follows:

> All persons within California who received an automated call to their cellular telephone from Defendants, their employees or their agents, with an artificial or prerecorded voice message, within the four years prior to the filing of the First Amended Complaint.

54. The Class and Sub-Class are together referred to as the "Classes."

55. Excluded from the Classes are: (1) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those

persons who have suffered personal injuries as a result of the facts alleged herein.

56. Plaintiff reserves the right to redefine the Classes, and to add and redefine any additional subclass as appropriate based on discovery and specific theories of liability.

57. The Classes that Plaintiff seeks to represent contain numerous members and are ascertainable including, without limitation, by using Defendants' records to determine the size of the Classes and to determine the identities of individual members of the Classes.

**Numerosity**

58. The members of the Classes are so numerous that joinder of all members would be unfeasible and impractical. The membership of the Classes is currently unknown to Plaintiff. However, given that, on information and belief, Defendants sent or transmitted, or had sent or transmitted on their behalf, unsolicited calls and voicemails to hundreds, if not thousands, of customers' cellular telephones nationwide transmitting an artificial or prerecorded voice message, during the proposed class period, it is reasonable to presume that the members of the Classes are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

**Commonality**

59. There are questions of law and fact common to the Classes that predominate over any questions affecting only individual members of the Classes. Those common questions of law and fact include, without limitation, the following:

    a) Whether within the four years prior to the filing of this First Amended Complaint, Defendants, or their employees or agents, transmitted any marketing calls, including any artificial or prerecorded voice messages, without the prior express written consent of Plaintiff and the members of the Classes;

b) Whether Defendants can meet their burden to show Defendants obtained prior express written consent (as defined by 47 C.F.R. § 64.1200(f)(8)) to send marketing calls and voicemails complained of, assuming such an affirmative defense is raised;

c) Whether Defendants have a business relationship with Plaintiff and the members of the Classes;

d) Whether Defendants' conduct was knowing and/or willful;

e) Whether MobileSphere is the entity that placed the calls to Plaintiff and members of the Classes;

f) Whether VRX Media is vicariously and/or directly liable to Plaintiff and the members of the Classes for the calls;

g) Whether Plaintiff and the members of the Classes were damaged thereby, and the extent of damages for such violation; and,

h) Whether Defendants or affiliates, subsidiaries, or agents of Defendants should be enjoined from engaging in such conduct in the future.

**Typicality**

60. Plaintiff is qualified to, and will, fairly and adequately protect the interests of each member of the Classes similarly situated, and Plaintiff's claims (or defenses, if any) are typical of all members of the Classes, as demonstrated herein.

61. Plaintiff represents and is a member of the Classes because Plaintiff received at least one call and prerecorded voice message, without providing prior express written consent to Defendants within the meaning of the TCPA, and without a prior business relationship with Defendants. Consequently, the claims of Plaintiff are typical of the claims of the members of the

Classes, and Plaintiff's interests are consistent with and not antagonistic to those of the other members of the Classes that Plaintiff seeks to represent.

62. Plaintiff and all members of the Classes have been impacted by, and face continuing harm arising out of, Defendants' violations or misconduct as alleged herein.

**Adequacy**

63. Plaintiff is qualified to, and will, fairly and adequately protect the interests of each member of the Classes similarly situated, as demonstrated herein. Plaintiff acknowledges that Plaintiff has an obligation to make known to the Court any relationship, conflicts, or differences with any member of the Classes. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. In addition, the proposed class counsel is experienced in handling claims involving consumer actions and violations of Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq*. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each member of the Classes. Neither Plaintiff nor Plaintiff's counsel have any interests adverse to those of the other members of the Classes.

**Predominance**

64. Questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members of the Classes. The elements of the legal claims brought by Plaintiff and members of the Classes are capable of proof at trial through evidence that is common to the class rather than individual to its members.

**Superiority**

65. A class action is superior to other available methods for the fair and efficient

adjudication of this controversy because individual litigation of the claims of all members of the Classes is impracticable and questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes. Even if every individual member of the Classes could afford individual litigation, the court system could not. It would be unduly burdensome to the courts if individual litigation of the numerous cases were required.

66. Individualized litigation also would present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, conducting this action as a class action will present fewer management difficulties, conserve the resources of the parties and the court system, and protect the rights of each member of the Classes. Further, it will prevent the very real harm that would be suffered by numerous members of the Classes who will be unable to enforce individual claims of this size on their own, and by Defendants' competitors, who will be placed at a competitive disadvantage because they chose to obey the law. Plaintiff anticipates no difficulty in the management of this case as a class action.

67. The prosecution of separate actions by individual members of the Classes may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members not parties to those adjudications, or that would otherwise substantially impair or impede the ability of those non-party members of the Classes to protect their interests.

68. The prosecution of individual actions by members of the Classes would establish inconsistent standards of conduct for Defendants.

69. Defendants have acted or refused to act in ways generally applicable to the Classes, thereby making appropriate final and injunctive relief or corresponding declaratory relief with

regard to members of the Classes as a whole.  Likewise, Defendants' conduct as described above is unlawful, is capable of repetition, and will continue unless restrained and enjoined by the Court.

70. The Classes may also be certified because:

(a) the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards of conduct for Defendants;

(b) the prosecution of separate actions by individual members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

(c) Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the members of the Classes as a whole.

71. This suit seeks only damages and injunctive relief for recovery of statutory damages on behalf of the Classes and it expressly is not intended to request any recovery for personal injury and claims related thereto.

**CAUSES OF ACTION**

**First Cause of Action**
**Negligent Violations of the TCPA**
**47 U.S.C. §§ 227 *et seq*.**

72. Plaintiff repeats and incorporates by reference the allegations set forth above as though fully stated herein.

73. The forgoing acts and omissions of Defendants constitute numerous and multiple

negligent violations of the TCPA, including 47 U.S.C. §§ 227(b)(1)(A) as it relates to Defendants' repeated calls with a prerecorded voice message to Plaintiff's cellular phone, without any prior express written consent.

74. As a result of Defendants' negligent violations of 47 U.S.C. § 227, *et seq.*, Plaintiff and all members of the Classes are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

75. As a result of Defendants' negligent violations of 47 U.S.C. § 227, *et seq.*, Plaintiff and all members of the Classes are also entitled to, and do seek, an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

76. For the avoidance of doubt, Plaintiff does not bring a claim under 47 U.S.C. § 227(b)(1)(A) as it relates use of an "automatic telephone dialing system".

**Second Cause of Action**
**Knowing and/or Willful Violations of the TCPA**
**47 U.S.C. §§ 227 *et seq.***

77. Plaintiff repeats and incorporates by reference the allegations set forth above as though fully stated herein.

78. The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including 47 U.S.C. §§ 227(b)(1)(A) as it relates to Defendants' repeated calls with a prerecorded voice message to Plaintiff's cellular phone, without any prior express written consent.

79. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. §§ 227, *et seq.*, Plaintiff and all members of the Classes are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

80. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. §§ 227,

*et seq.*, Plaintiff and all members of the Classes are also entitled to, and do seek, an award of $1,500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

81. For the avoidance of doubt, Plaintiff does not bring a claim under 47 U.S.C. § 227(b)(1)(A) as it relates use of an "automatic telephone dialing system".

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the members of the Classes, prays for the following relief:

- That this action be certified as a Class Action, establishing the Classes and any appropriate sub-classes that the Court may deem appropriate;

- Appointing Plaintiff as the representative of the Classes;

- Appointing the law firms representing Plaintiff as Class Counsel;

- An award of $500.00 in statutory damages to Plaintiff and each member of the Classes for each and every negligent violation of 47 U.S.C. § 227(b)(1) by Defendants, pursuant to 47 U.S.C. § 227(b)(3)(B);

- An award of $1,500.00 in statutory damages to Plaintiff and each member of the Classes for each and every knowing and/or willful violation of 47 U.S.C. § 227(b)(1) by Defendants, pursuant to 47 U.S.C. § 227(b)(3)(B);

- Pre-judgment and post-judgment interest;

- An order providing injunctive relief prohibiting such conduct in the future, pursuant to 47 U.S.C. § 227(b)(3)(A);

- Costs of suit;

- An award of reasonable attorneys' fees and costs to Plaintiff and the Classes, pursuant to the common fund doctrine and, *inter alia*, California Code of Civil Procedure § 1021.5, any other common law or statutory basis.

- Any other further relief that the Court may deem just and proper.

## JURY DEMAND

82. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: December 20, 2021  Respectfully submitted,

By *s/* Jason A. Ibey
Jason A. Ibey, *admitted pro hac vice*
KAZEROUNI LAW GROUP, APC
321 N. Mall Drive, Suite R108
St. George, Utah 84790
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
Email: jason@kazlg.com

**MADAR LAW CORPORATION**
Alex S. Madar, *admitted pro hac vice*
11510 Eaglesview Ct.,
San Diego, CA 92127
Telephone: (858) 299-5879
Facsimile: (619) 354-7281
alex@madarlaw.net